**UNITED STATES DISTRICT COURT**

**WESTERN DISTRICT OF LOUISIANA**

**LAKE CHARLES DIVISION**

| | | |
|---|---|---|
| STEVE O'BRIEN | : | DOCKET NO. 2:05-cv-79<br>Section P |
| VS. | : | JUDGE TRIMBLE |
| JOSEPH YOUNG, WARDEN | : | MAGISTRATE JUDGE WILSON |

## REPORT AND RECOMMENDATION

Currently before the court is a petition for writ of *habeas corpus* filed by *pro se* petitioner, Steve O'Brien, pursuant to 28 U.S.C. §2241. Petitioner is currently incarcerated in the Federal Correctional Institution in Oakdale, Louisiana (FCI-Oak). By this petition, he challenges a prison disciplinary proceeding which resulted in the disallowance of 50% of his good time credit. This matter has been referred to the undersigned Magistrate Judge for review, report, and recommendation in accordance with 28 U.S.C. §636(b)(1)(B).

## FACTS

On July 23, 2003, he arrived at FCI-Oak and was housed in a 200-man open dorm. Petitioner states that he immediately began experiencing unmanageable levels of stress, anxiety, and severe depression. For these conditions, he reported to Psychological Services and underwent psychological evaluations by Dr. Craig. Petitioner states that Dr. Craig recommended that petitioner be assigned to an available two-man cell housing unit and to a less stressful job. He claims that the prison staff did not follow Dr. Craig's recommendations.

Petitioner states that on August 20, 2003, a correctional officer ordered petitioner's removal from general population for medical purposes of a psychological nature. Based upon the correctional

officer's order, petitioner was placed in the special housing unit (SHU). He claims that within an hour of being placed in the SHU, Officer Watts ordered him into a two man cell that was already occupied by two inmates (Dixon and Watkins). Shortly after entering this cell, a physical altercation occurred between petitioner and the other two inmates. Officer Watts and Lt. Blaze responded to the altercation, and the petitioner was removed to a secured shower where he was questioned by Lt. Blaze. Dr. Craig arrived sometime thereafter, and upon Dr. Craig's recommendation, Lt. Blaze ordered that the petitioner be housed alone.

Approximately 7 months after this incident, the petitioner was served with an incident report on March 22, 2004. On March 24, 2004, petitioner appeared before the unit disciplinary committee. Based upon the statement of the investigating officer, Lt. Schwinn, and the lack of a statement by petitioner, the committee found that petitioner had committed the prohibited act of fighting as charged and referred the matter to the Disciplinary Hearing Officer (DHO) for further proceedings. That same date, petitioner was provided with a written notice of the disciplinary hearing set before a DHO on the next available date and he signed a form indicating that he had been was advised of the rights afforded to him in connection with his hearing before the DHO.[1] On this notice, petitioner indicated that he waived his right to staff representation and made a request for two staff witnesses: Dr. Craig and Lt.

---

[1] This form notified petitioner of the following rights:
1. The right to have a written copy of the charges against him at least 24 hours prior to appearing before a DHO.
2. The right to have a full-time member of the staff who is reasonably available to represent him.
3. The right to call witnesses (or present written statements of unavailable witnesses) and to present documentary evidence in his behalf, provided institutional safety would not be jeopardized.
4. The right to present a statement or to remain silent. Although his silence may be used to draw an adverse inference against him.
5. The right to be present throughout the disciplinary hearing except during the period of deliberation or when institutional safety would be jeopardized.
6. The right to be advised of the DHO's decision, the facts supporting that decision (except where institutional safety would be jeopardized), and the DHO's disposition in writing.
7. The right to appeal the decision of the DHO by means of the Administrative Remedy Procedure to the Regional Director within 20 calendar days of notice of the DHO's decision and disposition.

Blaze. In support of his request for staff witnesses, petitioner indicated that Dr. Craig could testify that the petitioner should not have been placed in the cell with the other inmates because of his psychological problems and Lt. Blaze could testify that there was no investigation into the August 20, 2003 incident.

On April 13, 2004, petitioner appeared before the DHO for a disciplinary hearing. The DHO read the charge against petitioner (Code 201, Fighting) and asked the petitioner if he wanted to make a statement. In response, the petitioner asked where his requested staff witnesses were. The DHO informed petitioner that his request for staff witnesses had been denied. Petitioner then stated in response to the charge: "I don't remember that right now. I don't dispute anything. I came in here (SHU) because I was having problems."

The DHO entered a decision on June 9, 2004 finding the petitioner guilty of fighting as charged. In reaching this decision, the DHO relied on:

1. the written statement of the investigating officer (Lt. Schwinn);

2. the statements of the two other inmates made by them during their DHO hearings;

3. the medical assessments made immediately following the incident on August 20, 2003;

4. a written memorandum dated 8/20/2003 and signed by Lt. Watts indicating petitioner had injuries consistent with fighting;

5. a written memorandum dated 8/20/2003 and signed by Lt. Schwinn providing statements from all three inmates involved in the incident[2]; and

6. A memorandum written by Dr. Mayberry, finding petitioner "competent and

---

[2]According to the DHO report, Lt. Schwinn's memorandum indicated the following statements by the three inmates:
- Inmate Dixon admitted throwing food at O'Brien after O'Brien kicked inmate Watkins in the mouth.
- Inmate Watkins stated that O'Brien kicked him in the mouth so he began hitting O'Brien in the face and head with his fists.
- Petitioner stated that he was sitting on the toilet when Dixon and Watkins began hitting him with fists and food trays for no reason and that he defended himself but never hit anyone.

3

responsible for his incident report involving a fight on 08/20-03."

Based upon his findings, the DHO imposed the sanction of disallowance of good time credit– 50%.[3]

Petitioner appealed this decision to the Regional Director. By a decision dated August 24, 2004, the Regional Director denied petitioner's appeal. Specifically, the Regional Director found that the DHO's conclusion that the greater weight of evidence supported a finding of guilt was correct, that the delay in preparing the incident report did not adversely affect the DHO hearing, and that the DHO adequately documented the reasons for denying petitioners' request to call staff witnesses. Additionally, the Regional Director found that the sanction imposed was within BOP policy and commensurate with the severity of the offense.

Petitioner appealed the Regional Director's decision to the Administrator of National Inmate Appeals. On December 1, 2004, the Administrator denied petitioner's appeal, finding that the issues raised by petitioner on appeal were adequately addressed by the Regional Director. The Administrator further noted that the petitioner presented no mitigating factors which would absolve him from the charged offense, that the required disciplinary procedures were substantially followed, and that the greater weight of evidence supports the DHO's decision.

On January 10, 2005, the petitioner filed this petition challenging the loss of good time on the grounds that he was denied due process during his disciplinary hearing when his request for staff witnesses was denied. The government has responded to the petition and requests that the petition be dismissed because the petitioner was provided with all of the procedural due process to which he was entitled. Petitioner has filed a memorandum in opposition to the government's response.

---

[3]This penalty was imposed for the violation of Code 201, fighting with another person, and actually results in the disallowance of 50% (or 27 days) of the goodtime credit available to the petitioner for the year. *See* 28 CFR § 541.13, Table 3.

## LAW AND ANALYSIS

A due process claim is only cognizable when a recognized liberty or property interest is at stake. *Board of Regents v. Roth,* 92 S.Ct. 2701, 2705 (1972). Although the United States Supreme Court case of *Sandin v. Conner,* 115 S.Ct. 2293 (1995) limited the occasions in which a prisoner is entitled to due process protections in disciplinary hearings to instances where the prisoner is subjected to sanctions which "impose[] atypical and significant hardships on the inmate in relation to the ordinary incidents of prison life," the Fifth Circuit has recognized that the loss of good time credit as a result of a disciplinary charge triggers the due process protections enunciated by *Wolff v. McDonnell,* 94 S.Ct. 2963 (1994). *Madison v. Parker,* 104 F.3d 765, 767 (5th Cir. 1997), citing *Murphy v. Collins,* 26 F.3d 541, 543 n.5 (5th Cir. 1994); *see also Guillot v. Day,* 1997 WL 253126, *3 (E.D.La. 1997). Accordingly, before a federal prisoner can be deprived of good time credit, the Due Process clause of the Fifth Amendment of the United States Constitution requires that he be given certain procedural protections. *See Henson v. U.S. Bureau of Prisons,* 213 F.3d 897, 898 (5th cir. 2000); *Superintendent, Mass. Correctional Institution v. Hill*, 105 S.Ct. 2768, 2773 (1985), citing *Wolff v. McDonnell,* 94 S.Ct. 2963 (1974). At a minimum, the prisoner is entitled to (1) advance written notice of the disciplinary charges; (2) an opportunity to present evidence in his defense[4]; and (3) a written statement by the factfinder of the evidence relied on and the reasons for the disciplinary action. Additionally, there must be "some evidence" which supports the disciplinary decision. *Hill,* 105 S.Ct. at 2772-75; *see also Von Kahl v. Brennan,* 855 F.Supp. 1413, 1418 (E.D. Pa. 1994).

At issue in this case is petitioner's right to call witnesses. It is undisputed that the petitioner's request to call Lt. Blaze and Dr. Craig to testify at the disciplinary hearing was denied. While the right

---

[4]This right to present evidence includes the right to call witnesses and present documentary evidence when such is consistent with institutional safety and correctional goals. *See Superintendent Mass. Correctional Institute v. Hill,* 105 S.Ct. at 2773.

of an inmate to call witnesses on his behalf is "chief among the due process minima outlined in *Wolff*"[5], this right is subject to the "mutual accommodation between institutional needs and objectives and the provisions of the Constitution"[6] and it may be denied if "granting the request would be 'unduly hazardous to institutional safety or correctional goals.'"[7] "Prison officials must have the necessary discretion to keep the hearing within reasonable limits and to refuse to call witnesses that may create a risk of reprisal or undermine authority". *Ponte*, 105 S.Ct. at 2195, quoting *Wolff*, 94 S.Ct. at 2980. Thus, this court will review the decision of the disciplinary board to deny petitioner's request to call witnesses for abuse of discretion.

Petitioner wanted to call Lt. Blaze to testify that there was no investigation of the incident on August 20, 2003. However, in denying the petitioner's request to call Lt. Blaze, the DHO pointed out that Lt. Schwinn and not Lt. Blaze conducted the investigation into the incident. The petitioner wanted to call Dr. Craig to testify about his psychological problems at the time of the incident in order to demonstrate mitigating circumstances for his involvement in the incident. The DHO denied this request based upon the fact that Dr. Mayberry, not Dr. Craig completed petitioner's competency examination and that requiring Dr. Craig to appear as a witness may place him in a conflicting position and interfere with his primary duty of providing mental health assistance to petitioner. The court finds that the DHO's decision to deny petitioner's request for staff witnesses was not an abuse of discretion nor arbitrary or capricious. This is especially true in light of the fact that the DHO has the discretion to keep the hearing within reasonable limits by calling "witnesses who have information directly

---

[5] *Ponte*, 105 S.Ct. at 2195

[6] *Baxter v. Palmigiano*, 96 S.Ct. 1551, 1559 (1976)

[7] *Ponte*, 105 S.Ct. at 2195, quoting *Wolff*, 94 S.Ct. at 2974.

6

related to the charges."[8] Neither the anticipated testimony of Lt. Blaze nor Dr. Craig (as offered by petitioner) was directly relevant to whether or not petitioner engaged in the charged offense of fighting. Accordingly, it was not material to the issue before the DHO. Thus, the court finds that the exclusion of these witnesses did not deprive the petitioner of due process in his disciplinary hearing.

For this reason,

IT IS RECOMMENDED that the petition for writ of *habeas corpus* be DENIED and DISMISSED WITH PREJUDICE.

Under the provisions of 28 U.S.C. §636(b)(1)(C), the parties have ten (10) business days from receipt of this Report and Recommendation to file any objections with the Clerk of Court. Timely objections will be considered by the district judge prior to a final ruling.

**FAILURE TO FILE WRITTEN OBJECTIONS TO THE PROPOSED FINDINGS AND RECOMMENDATIONS CONTAINED IN THIS REPORT WITHIN TEN (10) BUSINESS DAYS FROM THE DATE OF ITS SERVICE SHALL BAR AN AGGRIEVED PARTY FROM ATTACKING ON APPEAL, EXCEPT UPON GROUNDS OF PLAIN ERROR, THE UNOBJECTED-TO PROPOSED FACTUAL FINDINGS AND LEGAL CONCLUSIONS ACCEPTED BY THE DISTRICT COURT.**

THUS DONE AND SIGNED in Chambers at Lake Charles, Louisiana, this 31st day of August, 2005.

ALONZO P. WILSON
UNITED STATES MAGISTRATE JUDGE

---

[8] 28 CFR § 541.17(c).